562 So.2d 79 (1990)
Ben Edward GRAY
v.
Mary M. GRAY.
No. 89-CA-0237.
Supreme Court of Mississippi.
April 25, 1990.
*80 Ellis Turnage, Morris & Turnage, Cleveland, for appellant.
William E. O'Hare, Smith & O'Hare, Cleveland, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and PITTMAN, JJ.
PITTMAN, Justice, for the Court:
Mary Gray was awarded a divorce from her husband, Ben Gray, and received as a result periodic and lump sum alimony, possession of the couple's home and attorney's fees. Ben Gray moved for relief from the judgment under Miss.R.Civ.P. 60(b)(3). The trial court denied the motion. Ben Gray appeals the denial of the 60(b)(3) motion and the totality of the awards received by his wife. Finding no error, we affirm the judgment of the chancery court.

FACTS
Ben and Mary Gray were married on March 14, 1953, when Ben was seventeen and Mary was fifteen. They have four children, all of whom were grown and living on their own at the time of this proceeding. The couple separated on October 1, 1988, and Ben Gray moved in with another woman.
Mary Gray filed her Complaint for Divorce on December 9, 1988, alleging habitual cruel and inhuman treatment, habitual drunkenness, adultery and irreconcilable differences. The Complaint also asked for temporary support. The chancery court issued a decree on January 12, 1989, awarding Mary Gray temporary possession of the parties' home and ordered Ben Gray to pay certain bills.
The hearing in this cause was held on January 23, 1989. Much of the evidence was uncontradicted. The Grays started their marriage with no assets. Mary Gray raised the couple's four children and later worked outside the home. The couple owned free and clear a five-bedroom, two-bath house in Drew, Mississippi. Their house occupied two different lots, one in both the Grays' names, and one only in Ben *81 Gray's name. According to Mary Gray, the house might bring $25,000, although it had a value of $50,000 for tax purposes. They also owned free and clear some property in Grenada County, referred to as the Gore Springs property. This property had a mobile home on it. Ben Gray estimated its worth at $8-9,000.00. Ben Gray owned and operated Gray's Auto Repair, and had started the business in 1981. Before that he had owned a service station. Mary Gray had worked in both businesses, keeping the books, until 1984 or 1985. At the time of the hearing one of the Grays' daughters performed this job. Ben Gray kept two checking accounts with a total balance of $16,158.21. Mary Gray had a checking account with $40-50 in it and no savings account. The couple's 1986 tax returns showed an income of $1435.00 for Mary Gray and $8609.00 for Ben Gray, and the 1987 returns showed $4884.00 for Mary Gray and $10,674.00 for Ben Gray. Mary Gray drove a 1975 Chevrolet Caprice, and Ben Gray drove a 1973 Chevrolet Truck. Both of the vehicles were in Ben Gray's name and both were paid for. At the time of the hearing Mary Gray worked at TWL, a general store in Ruleville. Her net monthly salary from TWL was $406.63. Her estimated monthly expenses were $945.29, leaving a difference of $538.66. Mary Gray complained of arthritis, chronic sinus, bone spurs in her feet, and she had recently undergone surgery. The bone spurs had the potential of affecting her ability to work. Mary Gray had health insurance, with a $200.00 deductible, that paid 80% of the rest of her medical cost.
The trial court granted Mary Gray a divorce on the grounds of habitual cruel and inhuman treatment and adultery. It awarded to Mrs. Gray periodic alimony of $400.00/month, due and payable on February 1, 1989, and a lump sum of $5000.00, "representing a fair division of the cash assets of the parties." It further awarded sole and exclusive possession of the house in Drew to Mrs. Gray, not subject to partition, with each party to pay 1/2 of any major structural repairs to the house. Mrs. Gray was ordered to pay insurance and taxes on the property. She was also awarded use and possession of all the appliances and possessions in the house, with the exception of a Troy-Bilt tiller and a gun cabinet. Ben Gray received sole use and possession of the Gore Springs property. Mary Gray was awarded the Chevrolet Caprice, and Ben Gray got the Chevrolet Truck. Mary Gray was awarded $500.00 in attorney's fees.
Ben Gray, represented by new counsel, filed his notice of appeal on February 27, 1989, and his appeal bond with supersedeas on March 6, 1989. On April 14, Ben Gray filed a Notice of Deposition and Request for Production of Documents, seeking to depose the manager of the TWL Variety Store where Mary Gray worked. Mary Gray responded to this with a Motion to Strike this request, alleging that because the appeal had been perfected all proceedings in the chancery court had been stayed. On May 1, Ben Gray filed a Motion for Relief from Final Judgment under Miss.R. Civ.P. 60(b)(3), alleging that Mrs. Gray had found new employment in Drew which more than doubled her salary. Ben Gray alleged that despite the filing of the notice of appeal and the supersedeas bond, the chancery court still had jurisdiction to hear his motion until the record had been transmitted to the Supreme Court. It is undisputed that on May 1 the record was still being examined by the parties. On that same day Ben Gray also filed a Petition for Modification of Alimony. The chancery court refused to hear the 60(b)(3) motion, finding that it could not modify the judgment in question once supersedeas had been filed.

THE 60(B)(3) MOTION
Ben Gray alleged, in his Motion for Relief from Final Judgment under Rule 60(b)(3) filed on May 1, 1989, that "[a]t the time of the trial in this cause, Mrs. Gray's net salary was $93.31. Since the entry of this decree, Mrs. Gray has become employed in Drew, Mississippi and now earns $250.00 per week." (Emphasis Added.) This allegation is inconsistent with Ben Gray's Response to Motion to Strike, in which he alleges that "[s]ince the entry of *82 final judgment in this cause, the Plaintiff has become gainfully employed at the TWL Variety Store in Ruleville, Mississippi. Upon information and belief, the Plaintiff earns $250.00 per week." (Emphasis Added.) Gray's Petition for Modification alleges that "[a]t the time of the entry of the aforesaid decree, Mrs. Gray was not employed. Since the decree, upon information and belief, Mrs. Gray is employed at TWL Variety Store in Ruleville, Mississippi at a substantial income." (Emphasis Added.) The chancery court found as a fact that at the time of trial Mary Gray worked at TWL at a salary of $93.91 per week, and this finding is supported by trial testimony. Despite the contradictions in Ben Gray's various motions, there is one consistency: the alleged change in income occurred after the trial or decree.
Miss.R.Civ.P. 60 states in part:
(b) Mistakes; Inadvertence; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
... .
(3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
... .
The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than six months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. Leave to make the motion need not be obtained from the appellate court unless the record has been transmitted to the appellate court and the action remains pending therein. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court... .
Miss.R.Civ.P. 81(a)(9) states that divorce actions are governed primarily by statute, and that the rules of civil procedure apply only if they govern an area not covered by the statute or if they are not in conflict with the statute. Because we find no statute setting up any special procedure for appeal from a divorce action, or relief from a divorce judgment, if other conditions are met, Rule 60 is controlling in this situation.
The chancery court found that it could not modify the judgment in question, as Ben Gray had already filed bond for supersedeas. Because the record in this case had not yet been transmitted to this Court when the Motion for Relief under Rule 60(b)(3) was filed, the chancellor did have the authority to alter the final judgment if 60(b)(3) was otherwise applicable.
However, this Court often looks to federal authority when construing state rules of civil procedure modeled after federal counterparts. The federal counterpart of Miss.R.Civ.P. 60(b)(3) is Fed.R.Civ.P. 60(b)(2). The federal authorities seem unanimous in holding that for evidence to meet the requirement of 60(b)(2), it must have been in existence at the time of trial or at the time of the judgment which is allegedly in need of correcting. 7 J. Moore & J. Lucas, Moore's Federal Practice ¶ 60.23 (2d ed. 1987); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2859 (1973); Rivera v. M/T Fossarina, 840 F.2d 152, 156-157 (1st Cir.1988); Southmark Properties v. Charles House Corp., 742 F.2d 862, 873 (5th Cir.1984). Ben Gray's allegations only deal with evidence not in existence at the time of the judgment of divorce, and because of this, Rule 60(b)(3) is not applicable here. Therefore his argument for relief from judgment fails.

LUMP SUM AND PERIODIC ALIMONY
Ben Gray argues that the lump sum award of $5000.00 was error and not supported by the record. The total assets in the two bank accounts controlled by Ben Gray was $16,157.21. The other assets of the parties were the business, Gray's Auto Repair, which the trial court found to consist *83 "mainly of necessary tools having no appreciable value," and Mary Gray's checking account which had $40-50 in it.
Alimony, if allowed, should be reasonable in amount, commensurate with the wife's accustomed standard of living, minus her own resources, and considering the ability of the husband to pay. As long as the chancellor follows this general standard, the amount of the award is largely within his discretion. Wood v. Wood, 495 So.2d 503, 506 (Miss. 1986); Miss. Code Ann. § 93-5-23 (Supp. 1989). Ben Gray relies in part on Cheatham v. Cheatham, 537 So.2d 435 (Miss. 1988), which provides a summary of recent lump sum cases. According to Cheatham, four of the primary factors to be considered in reviewing a lump sum award are:
(1) Substantial contribution to accumulation of total wealth of the payor either by quitting a job to become a housewife, or by assisting in the spouse's business; (2) a long marriage; (3) where recipient spouse has no separate income or the separate estate is meager by comparison; (4) without the lump sum award the receiving spouse would lack any financial security.
Cheatham, 537 So.2d at 438 (citations omitted). After a review of the record we find that the chancellor was well within his discretion in making the lump sum award and if we apply the Cheatham argument, we affirm the award of the chancellor.
The standards for review of periodic alimony are much the same as those used in reviewing lump sum alimony. The chancellor should consider the reasonable needs of the wife and the right of the husband to lead as normal a life as possible with a decent standard of living. Massey v. Massey, 475 So.2d 802, 803 (Miss. 1985). Each case is decided on its own facts, and each party here has cited numerous cases. We cannot say that the award of $400/month periodic alimony is an abuse of discretion. However, we can note that a Petition for Modification of Alimony was filed after the decision by the chancery court. If there is further action on the Petition, the Chancery Court can review the monthly alimony award and there consider any evidence Ben Gray may offer.

ATTORNEY'S FEES
As proof of attorney's fees, Mary Gray introduced a statement for services rendered from her attorney listing charges for the temporary hearing, the divorce hearing, and court deposit for costs, totalling $800.00. The chancellor awarded $500.00. Ben Gray makes the argument, based on McKee v. McKee, 418 So.2d 764 (Miss. 1982), and its progeny, that insufficient evidence was presented to warrant the award of attorney's fees. Under a strict application of McKee, Carpenter v. Carpenter, 519 So.2d 891 (Miss. 1988), and Holleman v. Holleman, 527 So.2d 90 (Miss. 1988), the proof offered in the case at bar may be insufficient. However, Mary Gray was awarded only $500.00, a sum we find to be within the chancellor's discretion. Devereaux v. Devereaux, 493 So.2d 1310 (Miss. 1986). Mary Gray asks also for attorney's fees incurred on this appeal, and as a result $300.00 will be awarded for this purpose. Schilling v. Schilling, 452 So.2d 834 (Miss. 1984).

THE DIVISION OF REAL PROPERTY
The chancellor awarded Mary Gray sole and exclusive possession, use and control of the home owned by the parties, not subject to partition. Ben Gray alleges that this essentially negates his interest in the home. In this context, "not subject to partition" (as used in the decree and judgment of the court below) is mere surplusage, and in no way destroys or diminishes Ben Gray's interest in the Drew property.
Ben Gray further relies on Jones v. Jones, 532 So.2d 574 (Miss. 1988), for the notion that his wife might receive lump sum alimony or an equitable division of real property, but not both. Jones is distinguishable from the case at bar in that Jones dealt with jointly accumulated property titled in the name of one spouse. Except for part of the Drew residential property, the property in this case is in the name of both parties. This Court does not read Jones as presenting an either/or option *84 for chancellors, that they may award lump sum alimony or an equitable division of property but not both. See also Johnson v. Johnson, 550 So.2d 416 (Miss. 1989) (citing Jones). The division of real property in the case at bar was an equitable one and is affirmed, as is the remainder of the chancery court judgment.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.