WALLER, Chief Justice,
dissenting:
¶ 19. Because I believe that the chancellor equitably divided the marital estate and awarded sufficient alimony, I respectfully dissent.
¶ 20. Helen does not contest the equitable division 'of their marital property or the lump-sum alimony amount. Her brief states that “[i]t is not [Helen’s position] that the chancellor erred in awarding lump-sum alimony ..., rather it is her position that due to the disparity in income and lifestyle between [her] and David, that the chancellor committed error by not awarding permanent periodic alimony.” Similarly, her petition for certiorari requests that this Court “reverse the disal-lowance of permanent periodic alimony....” Because Helen does not contest the property division or lump-sum alimony *1252 amount, we need not address those issues. See M.R.A.P. 17, 28.
¶ 21. Still, I find that the chancellor equitably divided their marital estate and awarded more than sufficient lump-sum alimony. In the chancellor’s final order, she addressed the Ferguson factors, then equally divided the equity in their home, the TSP, the PERS account, and the bank accounts. See Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). Save for the delinquent rent and the mobile-home repairs, the chancellor also equally divided their marital debts. If we follow the chancellor’s logic and equally split the equity in the mobile home,[28] Helen received more than enough to cover any numerical equitable deficit.
¶ 22. After thorough, on-the-record findings, the chancellor determined that a $15,000 lump-sum award would enable Helen’s “fresh start.” Considering the actual numerical deficit, the amounts Helen received in marital-asset and debt payments, and the other factors addressed in the final order, the chancellor did not abuse her discretion in awarding this amount in lump-sum alimony.
¶ 23. As discussed above, Helen contends that the chancellor erred in awarding lump-sum rather than permanent alimony. Specifically, she refers to her initial pleadings requesting $1,500 per month and contends that “equity demands” that she be “entitled” to permanent alimony.
¶ 24. A chancellor’s decision to award permanent alimony must consider both need and ability to pay. See Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993); Gray v. Gray, 562 So.2d 79, 83 (Miss.1990). In making that decision, the chancellor considers, in relevant part, the reasonable net income and expenses of both spouses. Box v. Box, 622 So.2d 284, 288 (Miss.1993).
¶ 25. Here, a full evaluation of David’s net income and reasonable expenses dispels Helen’s contention that she is “entitled” to permanent alimony. David had no disposable income after his recurring monthly expenses; thus, making a monthly permanent-alimony payment would have been impossible unless he sacrificed the basic needs of them child or his household. In fact, since David had no funds remaining after his and Morgan’s expenses, the chancellor would have committed reversible error had she required him to pay permanent alimony in any amount. See McEachern v. McEachern, 605 So.2d 809, 814-15 (Miss.1992).
¶ 26. In sum, neither our precedent nor equity requires the chancellor to ensure a particular standard of living for the payee spouse to the utter detriment of the payor spouse and minor child. And that any of us might have arrived at a different decision matters not, as the chancellor fully considered Helen’s and David’s financial statements and heard their testimony. The chancellor awarded sufficient lump-sum alimony in light of the factors discussed above. Further, the chancellor’s decision to award lump-sum instead of permanent alimony was supported by substantial, credible evidence showing that David did not have the ability to make a monthly payment. Therefore, I would af *1253 firm the chancery court’s and the Court of Appeals’s decision.
LAMAR, J., JOINS THIS OPINION.

. In assessing the Ferguson factors, the chancellor recognized that Helen and David already had agreed to divide the following marital property: their income-tax refunds, the mobile home, the Tahoe, the Jeep, and the household furnishings and appliances. I think this logically suggests that Helen received all the equity in the mobile home, which further supports my finding that she received sufficient lump-sump alimony. See Ferguson, 639 So.2d at 928.