909 So.2d 155 (2005)
Leroy RUSHING, Appellant
v.
Margaret Carson RUSHING, Appellee.
No. 2004-CA-00215-COA.
Court of Appeals of Mississippi.
August 23, 2005.
*156 Laurel G. Weir, Philadelphia, for appellant.
Josie Mayfield Hudson, for appellee.
Before BRIDGES, P.J., GRIFFIS and BARNES, JJ.
GRIFFIS, J., for the Court.
¶ 1. Leroy Rushing appeals an order from the Chancery Court of Leake County finding him in contempt of court for failing to pay alimony. On appeal, Leroy asserts the following errors: (1) the chancellor erred in holding him in contempt of court for failing to pay alimony; (2) the chancellor erred in awarding attorney's fees and court costs to Margaret Carson Rushing (Margaret); and (3) the chancellor's decision was contrary to the overwhelming weight of the evidence. We find no error and affirm.

FACTS
¶ 2. Leroy and Margaret were granted a divorce based on irreconcilable differences on February 11, 2002. As part of the property settlement agreement, Leroy agreed to pay Margaret $600 per month in permanent periodic alimony, beginning on March 1, 2002.
¶ 3. On May 31, 2002, Margaret filed her first motion for citation of contempt with the court alleging that Leroy had failed to pay alimony for the months of March, April, and May 2002. Leroy was served with process but failed to appear for the hearing. The hearing was conducted in Leroy's absence, and Leroy was ordered to pay $5,100 for back alimony, attorney's fees, service of process fees, and filing fees. Thereafter, Leroy paid the $5,100.
¶ 4. On December 17, 2002, Margaret filed her second motion for citation of contempt alleging that Leroy had failed to pay alimony for the months of August, September, November, and December 2002. Prior to the court date, Leroy paid the back alimony.
¶ 5. In February 2003, Margaret requested that a withholding order be entered through the Social Security Administration so that the alimony would be sent to her directly from Leroy's Social Security check. However, it was learned that the State of Louisiana was already garnishing Leroy's Social Security check for the payment of back alimony that was owed to Leroy's former wife. Leroy was initially ordered to pay $250 per month in alimony to his former wife pursuant to a Louisiana judgment. However, that order was increased to $678 per month because Leroy repeatedly failed to make payments. Because of the Louisiana garnishment, the Social Security Administration could only give Margaret $40 per month from Leroy's Social Security check, leaving $560 per month in unpaid alimony.
¶ 6. On October 1, 2003, Margaret filed her third motion for citation of contempt alleging that Leroy owed her alimony for May, June, July, August, September, and October of 2003. At the hearing, Leroy was found in contempt of court and ordered *157 to pay $2,980 pursuant to a previous court order, $500 in attorney's fees, and $105 for service of process and filing fees for a total of $3,585. The chancellor further ordered that Leroy be incarcerated immediately but placed a stay on the incarceration pending the payment of $685 to Margaret on November 1, 2003. The chancellor also ordered Leroy to do a voluntary wage assignment and/or allotment through the Veteran's Administration ("V.A.") in order to pay the $600 per month in permanent periodic alimony owed to Margaret. However, Leroy never paid the alimony owed to Margaret. Instead, Leroy appealed to this Court.

STANDARD OF REVIEW
¶ 7. Our scope of review in domestic matters is limited. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Denson v. George, 642 So.2d 909, 913 (Miss.1994).

ANALYSIS

I. Did the chancellor err in finding Leroy in contempt of court for failing to pay alimony?
¶ 8. "Contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstances and both temporal and visual proximity, is infinitely more competent to decide the matters than we are." Elliott v. Rogers, 775 So.2d 1285, 1291(¶ 22) (Miss. Ct.App.2000). Leroy contends that the chancellor erred in finding him in contempt of court for failing to pay Margaret alimony pursuant to their final judgment of divorce. To support his argument, Leroy relies on Moses v. Moses, 879 So.2d 1036 (Miss.2004). In Moses, the court held that the amended final judgment of divorce was too vague and too indefinite to be enforced. Id. at 1040 (¶ 20). The court stated that "a person is entitled to be informed with a high degree of clarity as to exactly what his obligations are under a court order before he can be found in contempt for willingly disobeying that order." Id. at (¶ 16). Here, unlike Moses, the final judgement of divorce is clear and unambiguous. The property settlement agreement clearly states, "Husband and wife agree that husband shall pay to wife $600 per month as permanent periodic alimony. Said permanent periodic alimony payments shall be paid to wife beginning the 1st day of March, 2002, and husband shall continue to pay $600 per month to the wife for permanent periodic alimony on the 1st day of each month thereafter." By failing to pay Margaret the agreed upon amount of alimony, Leroy willfully disobeyed the chancellor's order.
¶ 9. In his brief to this Court, Leroy argues that the chancellor ordered him to be incarcerated unless the V.A. withheld money from his benefits check. He contends that the V.A. would not honor a withholding order, making it impossible for him to fulfill the chancellor's order. Indeed, it is correct that the V.A. cannot withhold money from a veteran's benefits check pursuant to a withholding order. 38 U.S.C. § 5301 provides that:
payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.
*158 ¶ 10. The record shows that the chancellor did not order the V.A. to withhold money from Leroy's benefits check. The chancellor acknowledged that the V.A. would not honor a withholding order. Instead, the chancellor ordered Leroy to request a voluntary wage assignment so that Margaret could be paid out of his V.A. benefits. Contrary to Leroy's assertion, requesting a voluntary wage assignment is not an impossible task. Leroy had the opportunity to voluntarily withhold money from his V.A. check in order to pay Margaret the money owed in back alimony. However, Leroy chose not to do this and instead appealed to this Court.
¶ 11. In Rose v. Rose, 481 U.S. 619, 636, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987), the Supreme Court held that state courts can use contempt sanctions and a veteran can be incarcerated for failing to pay child support even if the only source of those payments was the veteran's disability benefits. The Court stated:
[W]hile it may be true that these funds are exempt from garnishment or attachment while in the hands of the Administrator, we are not persuaded that once these funds are delivered to the veteran a state court cannot require that veteran to use them to satisfy an order of child support.
Id. at 635, 107 S.Ct. 2029. The Supreme Court's holding in Rose was extended to include alimony as well as child support since "both [were] viewed as familial support by the United States Supreme Court." See In re Marriage of Anderson, 522 N.W.2d 99, 101 (Iowa Ct.App.1994).
¶ 12. "[D]omestic relations are preeminently matters of state law," and "Congress, when it passes general legislation, rarely intends to displace state authority in this area." Mansell v. Mansell, 490 U.S. 581, 587, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). The chancellor's efforts to enforce his alimony award by holding Leroy in contempt did not conflict with the congressional intent of the Veteran's benefits provisions of Title 38. Once the benefits were delivered to Leroy, the chancellor had authority to require that Leroy use those funds to satisfy the alimony owed to Margaret. Thus, the chancellor's order that Leroy voluntarily withhold money from his benefits check was not an abuse of discretion.
¶ 13. A finding of civil contempt is given deference because the trial judge is in a better position to review all circumstances including the credibility of the witness and the facts of the case. Montgomery v. Montgomery, 873 So.2d 1071, 1072(¶ 5) (Miss.Ct.App.2004). If substantial evidence supports the findings, we will affirm. Id. Upon review, we find there is substantial evidence to support the chancellor's finding of contempt. The record shows that Leroy repeatedly failed to comply with a previous court order requiring him to pay alimony to Margaret. Therefore, the chancellor did not err in finding Leroy in contempt.

II. Did the chancellor err in awarding Margaret attorney's fees and court costs?
¶ 14. The chancellor ordered Leroy to pay Margaret's attorney's fees and court costs for having to bring the contempt action. Leroy argues that there is no proof as to the reasonableness or necessity of attorney's fees and again cites Moses as support for his argument. In Moses, there was no testimony regarding the amount of the wife's attorney's fees and no request for attorney's fees. Moses, 879 So.2d at 1041(¶ 21). Here, Margaret requested attorney's fees and provided proof as to the reasonableness and necessity of those fees. "When a party is held in contempt for violating a valid judgment of *159 the court, then attorney's fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment." Elliott, 775 So.2d at 1290(¶ 25). But for Leroy's repeated failure to pay, Margaret would not have incurred the expense of bringing multiple contempt actions against him.
¶ 15. The determination of attorney's fees is a matter largely within the sound discretion of the chancellor. Magee v. Magee, 661 So.2d 1117, 1127 (Miss.1995). We are reluctant to disturb a chancellor's decision to award attorney's fees and the amount awarded. Id. Upon review, we find that the chancellor did not err in awarding attorney's fees and court costs to Margaret.

III. Was the chancellor's decision contrary to the overwhelming weight of the evidence?
¶ 16. The chancellor denied Leroy's request for a modification of alimony. Leroy argues that this decision is contrary to the overwhelming weight of the evidence. The record shows that Leroy was ordered to pay $250 per month in alimony to his former wife pursuant to a Louisiana judgment entered in 1994. However, Leroy failed to pay the alimony and, as a result, the State of Louisiana began to garnish his Social Security check in the amount of $678. Leroy argues that because of this prior alimony award, along with other debts incurred, he is unable to pay Margaret the alimony ordered. However, the record shows that Leroy knew about the prior alimony award of $250 per month, as well as the other debt, at the time of his divorce from Margaret, and yet, he still agreed to pay Margaret $600 per month in alimony.
¶ 17. Leroy further argues that his living expenses have increased due to the fact that he is now remarried with two children. However, when Leroy remarried and fathered two children, he knew of his obligation to Margaret.
¶ 18. In response to Leroy's motion for modification, the chancellor stated:
[Leroy] had a copy of that divorce judgment since '94 or '95. So he knew what his obligations were.
I can assure you, this Court is not going to unilaterally modify [Margaret's] alimony because [Leroy] didn't pay any attention to what might have been happening in Louisiana. I'm not going to do that.
So as far as any request for relief by modification, it's denied. There has been  [Leroy] ha[s] shown no change in circumstances that he didn't create himself.
When [Leroy] got married, following his divorce from [Margaret] and created another family, he did  he did so facing a known obligation to [Margaret] [and][a] known obligation to his prior wife in Louisiana.
¶ 19. "[A]limony is normally modifiable if there is a showing of material and unanticipated change in circumstances of the parties arising after the original decree was rendered." Elliott, 775 So.2d at 1287(¶ 8). Here, there is no material and unanticipated change in circumstances. As the chancellor correctly stated, there has been no change of circumstances that Leroy did not create himself. It is not Margaret's fault that Leroy failed to pay alimony to his former wife or allowed it to accumulate for several years. Furthermore, Leroy's argument that his alimony obligations to Margaret should be reduced because he has so many other financial obligations is without legal merit. "Personal bills cannot be used as a factor to reduce support payments." Varner v. Varner, 666 So.2d 493, 497 (Miss.1995).
*160 ¶ 20. Leroy's predicament was created by his own failure to make the required alimony payments to his former wife. Initially, that payment was only $250 per month. It was not until Leroy failed to pay and allowed the alimony to accumulate that the State of Louisiana began to garnish his Social Security check in the amount of $678 per month. The fact that the $250 award of alimony has now increased is no one's fault but Leroy's. He should not now be allowed to escape his responsibility to Margaret.
¶ 21. Upon review, we find that the chancellor did not err in denying Leroy's motion for modification. Thus, the chancellor's decision is not against the over-whelming weight of the evidence.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF LEAKE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, BARNES AND ISHEE, CONCUR.